## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### Tyler Division

| | |
|---|---|
| SHIELDS OF STRENGTH, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 6:21-cv-484-JCB |
| | ) |
| U.S. DEPARTMENT OF DEFENSE, et al. | ) |
| | ) |
| Defendants | ) |

### THE INDIVIDUAL-CAPACITY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS ALL CLAIMS AND MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Paul Jensen, Jessica O'Haver, Nadine Santiago, and April Rowden, in their individual capacities (collectively, the "individual Defendants"), move to dismiss all claims against them for failure to state a claim upon which relief can be granted. Mr. Jensen, Ms. O'Haver, and Ms. Santiago also move to dismiss for lack of personal jurisdiction under Rule 12(b)(3). This motion is based on the included Memorandum of Law, attached exhibits, and any oral argument the court may allow.

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................1

BACKGROUND ..............................................................................................1

    A.    Trademark Law................................................................................1

    B.    DOD's Trademark Licensing Programs, Offices, and Policies...................3

    C.    SOS's Allegations and Documents Incorporated by Reference.................5

        1.    SOS's Negotiations and 2012 License with the Army's TLPO. ................6

        2.    SOS's Negotiations and 2018 License with the Marine Corps' TLPO....................7

        3.    The Navy's TLPO Denies SOS a Contract to use Navy Trademarks. ...................9

        4.    SOS's Negotiations and 2017 License with the Air & Space Forces IPMO.............9

    D.    SOS's Claims ................................................................................10

STATEMENT OF ISSUES ................................................................................11

ARGUMENT ..................................................................................................11

I.      DAMAGES FROM THE PERSONAL ASSETS OF TRADEMARK LICENSING EMPLOYEES ARE NOT "APPROPRIATE RELIEF" UNDER RFRA. ...................12

    A.    Damages are Not an Appropriate Remedy for a RFRA Claim Premised on a Challenge to DOD Trademark Licensing Policy...............................................13

    B.    It is Not "Appropriate" to Hold Individual Trademark Officials Financially Liable for their Employer's Policy and Actions...........................................14

    C.    Congress would Doubt that Damages are "Appropriate" Against Individual Military Trademark Licensing Officials..................................................17

II.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY. .......................................................................................................18

    A.    The Individual Defendants Did Not Personally Participate in Violating RFRA....19

    B.    SOS Does Not Allege A Violation Of A Clearly Established Right. ........................22

III.  THE COURT LACKS PERSONAL JURISDICTION OVER JENSEN, O'HAVER, AND SANTIAGO................................................................................28

CONCLUSION ...............................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*A.M. v. Holmes,*
   830 F.3d 1123 (10th Cir. 2016) ........................................................................ 15

*Adkins v. Kaspar,*
   393 F.3d 559 (5th Cir. 2004) ........................................................................... 21

*Ashcroft v. al–Kidd,*
   563 U.S. 731 (2011) .......................................................................... 19, 23, 27

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................... 5, 10, 14, 20

*Authentic Apparel Grp., LLC v. United States,*
   989 F.3d 1008 (Fed. Cir. 2021) .......................................................................... 3

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
   575 U.S. 138 (2015) ..................................................................................... 2, 3

*Berk v. Wiggins,*
   No. 18-cv-2301, 2020 WL 6528937 (N.D. Tex. Oct. 6, 2020).................................. 10

*Bevill v. UAB Walker Coll.,*
   62 F. Supp. 2d 1259 (N.D. Ala. 1999) .............................................................. 23

*Biron v. Fed. Med. Ctr.,*
   No. 19-cv-322, 2019 WL 3304885 (N.D. Tex. July 23, 2019)........................... 19, 27

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) ...................................................................................... 10

*BJB Ltd. v. iStar Jewelry LLC,*
   533 F. Supp. 3d 83 (E.D.N.Y. 2021) .................................................................. 3

*Bloch v. Thompson,*
   No. 03-cv-1352, 2007 WL 60930 (E.D. Tex. Jan. 5, 2007) .................................. 12

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,*
   748 F.3d 631 (5th Cir. 2014) ........................................................................... 5

*Brennan's Inc. v. Dickie Brennan & Co. Inc.,*
   376 F.3d 356 (5th Cir. 2004) ........................................................................... 2

*Brooklyn Bottling of Milton, New York, Inc. v. Ecuabeverage Corp.,*
   No. 07-cv-8483, 2008 WL 577288 (S.D.N.Y. Mar. 3, 2008)................................. 11

*Brosseau v. Haugen,*
   543 U.S. 194 (2004)....................................................................................... 22

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)....................................................................................... 28

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014)....................................................................................... 19

*Corr. Servs. Corp. v. Malesko,*
   534 U.S. 61 (2001)......................................................................................... 13

*D.C. v. Wesby,*
   138 S. Ct. 577 (2018)........................................................................... 19, 22, 23

*D'Andrea Bros. LLC v. United States,*
   96 Fed. Cl. 205 (Fed. Cl. 2010) ......................................................................... 2

*Davila v. Gladden,*

   777 F.3d 1198 (11th Cir. 2015) ................................................................ 11

*Davis v. Fed. Bureau of Prisons*,
   No. 15-cv-0884, 2017 WL 11504857 (D. Colo. Apr. 7, 2017) ............................ 20

*Davis v. Scherer*,
   468 U.S. 183 (1984) ................................................................................ 22

*Def. Distributed v. Grewal*,
   971 F.3d 485 (5th Cir. 2020) ............................................................. 28, 29

*Dugan v. Rank*,
   372 U.S. 609 (1963) ................................................................................ 16

*Epco Holdings, Inc. v. Enserca, LLC*,
   No. 10-cv-0726, 2010 WL 2472204 (S.D. Tex. June 16, 2010)........................... 29

*Evergreen Media Holdings, LLC v. Safran Co.*,
   68 F. Supp. 3d 664 (S.D. Tex. 2014) ......................................................... 30

*Fazaga v. FBI*,
   965 F.3d 1015 (9th Cir. 2020) ................................................................ 19

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ................................................................................ 13

*Frank v. PNK (Lake Charles) L.L.C.*,
   947 F.3d 331 (5th Cir. 2020) ................................................................... 28

*Garraway v. Lappin*,
   No. 10-cv-1697, 2012 WL 959422 (M.D. Pa. Mar. 21, 2012) .............................. 15

*Gerlich v. Leath*,
   861 F.3d 697 (8th Cir. 2017) ............................................................. 23, 24

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ................................................................................ 18

*Hunter v. Bryant*,
   502 U.S. 224 (1991) ................................................................................ 18

*Henley v. Simpson*,
   527 F. App'x 303 (5th Cir. 2013) ........................................................ 16, 17

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997) ................................................................................ 17

*In re City of Houston*,
   731 F.3d 1326 (Fed. Cir. 2013)................................................................... 2

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ...................................................................... 6

*In re KG Winddown, LLC*,
   632 B.R. 448 (Bankr. S.D.N.Y. 2021)........................................................... 2

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................. 28

*Luder v. Endicott*,
   253 F.3d 1020 (7th Cir. 2001) ................................................................... 17

*Malley v. Briggs*,
   475 U.S. 335 (1986) ................................................................................ 18

*Matal v. Tam*,
   137 S. Ct. 1744 (2017)........................................................................... 1, 2

*McCreary Cnty. v. ACLU*,

545 U.S. 844 (2005) ............................................................................... 25

*McFadin v. Gerber*,
587 F.3d 753 (5th Cir. 2009) ................................................................ 30

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ............................................................................... 18

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
481 F.3d 309 (5th Cir. 2007) ................................................................ 29

*Morgan v. Swanson*,
659 F.3d 359 (5th Cir. 2011) ........................................................... 24, 26

*Mr Showers, LLC v. Mr. Shower Door, Inc.*,
No. 21-cv-00520, 2021 WL 5918921 (E.D. Tex. Dec. 15, 2021) ........... 30

*Mullenix v. Luna*,
577 U.S. 7 (2015) ................................................................................... 23

*Newdow v. Bush*,
355 F. Supp. 2d 265 (D.D.C. 2005) ....................................................... 25

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
676 F.3d 829 (9th Cir. 2012) ................................................................ 11

*Oliver v. Scott*,
276 F.3d 736 (5th Cir. 2002) ................................................................ 14

*Parker v. Prairie View A & M Univ.*,
145 F. Supp. 3d 702 (S.D. Tex. 2015) ................................................... 17

*Pearson v. Callahan*,
555 U.S. 223 (2009) ............................................................................... 18

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ................................................................................. 16

*Pleasant Grove City, Utah v. Summum*,
555 U.S. 460 (2009) ......................................................................... 24, 25

*Reichle v. Howards*,
566 U.S. 658 (2012) ............................................................................... 19

*Ruth Anne M. v. Alvin Indep. Sch. Dist.*,
532 F. Supp. 460 (S.D. Tex. 1982) ....................................................... 17

*Santa Fe Indep. Sch. Dist. v. Doe*,
530 U.S. 290 (2000) ............................................................................... 26

*Satkides v. Cooper*,
742 F. Supp. 382 (W.D. Tex. 1990) ...................................................... 29

*Saucier v. Katz*,
533 U.S. 194 (2001) ............................................................................... 18

*Solida v. McKelvey*,
820 F.3d 1090 (9th Cir. 2016) .............................................................. 10

*Sossamon v. Texas*,
563 U.S. 277 (2011) ............................................................................... 12

*Tanzin v. Tanvir*,
141 S. Ct. 486 (2020) ...................................................................... passim

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ................................................................................. 5

*Thompson v. Steele*,

709 F.2d 381 (5th Cir. 1983) ........................................................................... 14, 20
*Tinsley v. Pittari*,
   952 F. Supp. 384 (N.D. Tex. 1996) ................................................................ 12, 19
*Triplett v. Fed. Bureau of Prisons*,
   No. 08-cv-1252, 2008 WL 4378430 (N.D. Tex. Sept. 25, 2008) ....................... 10
*Turner v. City Council of City of Fredericksburg, VA*,
   534 F.3d 352 (4th Cir. 2008) ............................................................................. 25
*U.S. ex rel. Parikh v. Citizens Med. Ctr.*,
   977 F. Supp. 2d 654 (S.D. Tex. 2013) ............................................................... 18
*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) ............................................................................... 5
*United Drug Co. v. Theodore Rectanus Co.*,
   248 U.S. 90 (1918) ............................................................................................... 2
*Vetcher v. ICE*,
   16-cv-0164, 2018 WL 11174809 (N.D. Tex. Nov. 29, 2018) .............................. 20
*Vincent v. City of Sulphur*,
   805 F.3d 543 (5th Cir. 2015) ......................................................... 22, 26, 27, 28
*Vu v. Meese*,
   755 F. Supp. 1375 (E.D. La. 1991) ................................................................... 29
*Walden v. CDC*,
   669 F.3d 1277 (11th Cir. 2012) ......................................................................... 19
*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................... 28, 29, 30
*Webman v. Fed. Bureau of Prisons*,
   441 F.3d 1022 (D.C. Cir. 2006) ......................................................................... 12
*Wolcott v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ............................................................................... 5
*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ....................................................................... 10, 13, 18


**Statutes, Rules, Regulations, and Other Authorities**

5 C.F.R. § 2635.702 ...................................................................................... 4, 37
10 U.S.C. § 2260 ........................................................................................ 3, 4, 18
10 U.S.C. § 2481 ................................................................................................. 7
10 U.S.C. § 8921(b) ............................................................................................ 3
15 U.S.C. § 1065 ............................................................................................ 2, 3
15 U.S.C. § 1114 ............................................................................................... 17
15 U.S.C. § 1125(a)(1)(A) ................................................................................. 26
28 U.S.C. § 1658 ............................................................................................... 15
32 C.F.R. § 765.14(d) .......................................................................................... 5
42 U.S.C. § 1983 ............................................................................................... 16
42 U.S.C. § 2000bb-1(a) .................................................................................... 19
42 U.S.C. § 2000bb-1(c) .................................................................................... 11
55 Fed. Reg. ...................................................................................................... 38
Exec. Order No. 12731 ...................................................................................... 27

## INTRODUCTION

A Texas company, Plaintiff Shields of Strength (SOS), sold military-themed replica "dog tags" with U.S. Department of Defense (DOD) trademarks while refusing to adhere to a DOD trademark licensing policy that avoids government promotion of ideological messages, including (but not limited to) religious messages. After three military branches declined to enter or renew trademark licensing contracts with it, SOS filed this suit, seeking, among other things, money damages under the Religious Freedom Restoration Act (RFRA) from the four DOD employees whose jobs were simply to explain DOD policy. This claim, challenging routine and innocuous conduct of implementing a legally sound DOD policy, should be dismissed for several reasons.

First, damages from individual DOD employees are not "appropriate relief" authorized by RFRA because SOS's true challenge is to ongoing DOD policy, for which it seeks injunctive relief, and it is not appropriate to hold individuals personally and financially liable for their agencies' policies when they played no role in developing those policies. Second, the individual Defendants enjoy qualified immunity because they did not personally participate in any RFRA violation and because any actions they took did not substantially burden SOS's exercise of its religious beliefs. Third, the individual Defendants are entitled to qualified immunity because SOS cannot establish that any of their conduct violated clearly established law under RFRA. Finally, this court lacks personal jurisdiction over Jensen, O'Haver, and Santiago, who work out of offices in Virginia and never directed any activities at the State of Texas.

## BACKGROUND

### A.      Trademark Law

Trademarks "were protected at common law and in equity" at this country's founding. *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017). "A trademark 'designate[s] . . . goods as the product

of a particular trader' and 'protect[s] his good will against the sale of another's product as his."
*Id.* (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)). "The principle
underlying trademark protection is that distinctive marks—words, names, symbols, and the
like—can help distinguish a particular artisan's goods from those of others." *B & B Hardware,*
*Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015). "One who first uses a distinct mark in
commerce thus acquires rights to" it, including "preventing others from using" it. *Id.*

  Federal law did not create trademarks, but Congress has long played a role in protecting
them. *See id.* In 1946, it enacted the Lanham Act, the current federal trademark scheme, creating
at least two ways to protect trademarks: an owner can register a mark with the U.S. Patent &
Trademark Office, and bring suit for infringement in federal court. *See id.* (noting registration
confers "important legal rights and benefits," including being "constructive notice of the
registrant's claim of ownership," and "prima facie evidence of the validity of the registered
mark" and the owner's "exclusive right to use the registered mark in commerce"). Once
registered for five years, marks "can become 'incontestable.'" *Id.* (quoting 15 U.S.C. § 1065).

  Just like private entities, governments own trademarks; Congress "plainly contemplate[d]
a government entity being an 'applicant'" in registering marks. *In re City of Houston*, 731 F.3d
1326, 1330 (Fed. Cir. 2013). And governments, like private entities, may license their marks.
*E.g.*, *D'Andrea Bros. LLC v. United States*, 96 Fed. Cl. 205, 218-20 (Fed. Cl. 2010) (finding the
United States did not breach a license by allowing other companies to use the Army-trademarked
phrase "HooAH!" in selling nutrition bars). A trademark license is a contract that "gives one
party the right to use another party's mark (*i.e.*, to engage in otherwise infringing activity),
generally in exchange for a royalty or other payment." *Brennan's Inc. v. Dickie Brennan & Co.*
*Inc.*, 376 F.3d 356, 364 (5th Cir. 2004). It is not a "transfer of ownership rights in" the mark. *In*

*re KG Winddown, LLC*, 632 B.R. 448, 489 (Bankr. S.D.N.Y. 2021). "[I]t is black letter law that

the scope of a trademark license is defined by the terms of that license, and that 'a use by a

licensee which is outside the scope of the license is both trademark infringement and a breach of

contract.'" *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 99 (E.D.N.Y. 2021). When

licensing marks, owners set the terms on which they allow others to use them. *See Authentic

Apparel Grp., LLC v. United States*, 989 F.3d 1008, 1015 (Fed. Cir. 2021) ("Contracting parties,

including parties who contract with the government, are generally held to the terms for which

they bargained. That principle is equally applicable in this [trademark licensing] case."). Owners,

however, may not give licensees free rein to use their marks: trademark law requires them to

avoid a "naked license" and to "maintain quality control over" products associated with their

marks. *Id.* at 1016-17 ("[Plaintiff] has not persuaded us that the Army's exercise of its broad

approval discretion under the license . . . is inconsistent with principles of trademark law.").

### B.    DOD's Trademark Licensing Programs, Offices, and Policies.

DOD and the military branches "claim rights in and own U.S. trademark registrations for

numerous word marks and insignia," like "Army, Navy, Marines, or Air Force, as well as

designs and other insignia." Compl. ¶¶ 58-60.[1] Before 2004, some military branches, like the

U.S. Marine Corps (USMC), had informal programs where companies could obtain "written

permission" to use certain trademark-protected insignias in commerce, without a licensing

agreement or paying a royalty. *See* 10 U.S.C. § 8921(b); *see also* 32 C.F.R. § 765.14(d).

In 2004, Congress enacted 10 U.S.C. § 2260, giving each military branch discretion to

"license trademarks" owned or controlled by that branch and "retain and expend fees" to operate

---

[1] While SOS "does not concede" that DOD's marks are "enforceable" or that DOD owns other
rights, *id.* ¶ 58, n.8, it does not properly raise any claim challenging their validity. *See B & B Hardware,
Inc.*, 575 U.S. at 143 (noting how marks can become "incontestable" after registered for five years
(quoting 15 U.S.C. §§ 1065, 1115(b)).

licensing programs, secure registrations, and for the military's morale, welfare, and recreation activities. *Id.* §§ 2260(a)-(d). Pursuant to that law, each branch established Trademark Licensing Program Offices (TLPOs), which must adhere to policies created by the Assistant Secretary of Defense for Public Affairs (ASD(PA)). *See* DOD Directive 5535.09, *DOD Branding and Trademark Licensing Program* (Dec. 19, 2007), https://www.esd.whs.mil/Portals/54/Documents /DD/issuances/dodd/553509p.pdf. The ASD(PA) issues Instructions and policy guidance to each branch about the licensing of their marks, *see id.* ¶ 5.1.4, and the "Secretaries of the Military Departments" develop and implement licensing programs "in coordination with the ASD(PA) to ensure" they comply "with DOD policy," *id.* ¶ 5.2. As SOS alleges, Compl. ¶ 61, each military branch now has a TLPO that manages their trademarks, which generally cannot "be used without a license agreement." Dep't of Def., *DOD Branding & Trademarks*, defense.gov, https:// www.defense.gov/Resources/Branding-and-Trademarks (noting each TLPO's location).

Paul Jensen was the Army TLPO Director (now a Coordinator) in Arlington, Virginia. Compl. ¶ 14. Jessica O'Haver is the Marine Corps' TLPO Director in Stafford, Virginia. *Id.* ¶¶ 16. Nadine Santiago is the Navy's TLPO Director in Arlington, Virginia. *Id.* ¶ 18. April Rowden is Director of the U.S. Air & Space Forces (USAF) Intellectual Property Management Office (IPMO) at Randolph Air Force Base, in Texas. *Id.* ¶ 20. These individuals are not attorneys. After their offices were created, the ASD(PA) issued DOD Instruction 5535.12 ("the DODI") in September 2013, which provides, in pertinent part, that in accordance with 5 C.F.R. § 2635.702,

> DOD marks may not be licensed for use in a manner that creates a perception of DOD endorsement of any non-federal entity or its products and services. *DOD marks may not be licensed for any purpose intended to promote ideological movements, sociopolitical change, religious beliefs (including non-belief), specific interpretations of morality, or legislative/statutory change*. . . .

DODI 5535.12, *DoD Branding & Trademark Licensing Program Implementation*, at 6, Encl. 2, ¶ 2(d) (Sept. 13, 2013), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/ 553512p.pdf (emphasis added). Against this backdrop, SOS brings suit challenging the DODI's enforcement and each TLPO's decision about whether to enter a licensing contract with SOS.

C.    **SOS's Allegations and Documents Incorporated by Reference.[2]**

Since 1998, SOS and its founder, John Vaughan, have created and sold military-themed items, like imitation "dog tags," that often draw on the Bible for encouraging words or phrases. Compl. ¶ 2. SOS sells its products globally online, and its customers include current and former U.S. military members, their families, foreign military members, first responders, church groups, and rescue organizations. *Id.* ¶¶ 5, 36-40, 44, 47. Its products "always prominently display[]" its name and logo. *Id.* ¶ 55. And its original dog tag depicted the non-trademarked American flag on one side and a Bible verse, with citation to chapter and verse, on the other. *Id.* ¶¶ 6, 31.

In 2001, customers began requesting items with trademarked images, like the Army insignia. *Id.* ¶¶ 6, 65. SOS then started selling items with DOD marks alongside Bible quotes. *Id.* ¶¶ 6, 64; *see also* Ex. A to Compl., ECF 1-1, at 1-10. SOS does not allege that it obtained permission before doing so, but says it initially had a "well-established" relationship with DOD, which "did not require [it] to obtain licenses . . . to produce and sell military-themed products,"

---

[2] For purposes of this motion only, the individual Defendants accept as true the Complaint's well-pled factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, though, courts "must" also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Here, SOS often quotes from documents without appending them to its complaint, including emails and licenses with each TLPO. In doing so, it incorporates the documents by reference and it is well-settled that courts should consider them at this stage. *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014); *see also Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). The individual Defendants thus cite within, and attach as exhibits to, this motion documents that SOS references in its complaint. *See* Individual Defs. MTD Exs. (hereafter, "MTD Ex.") 1-8. Notably, if the complaint's allegations are "contradicted by the contents of an exhibit . . . the exhibit and not the allegation controls." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

until 2011, when DOD officials began saying it needed a license to continue selling military-themed items with DOD marks. Compl. ¶¶ 5-7, 41, 56-57, 64. This roughly aligns with § 2260's passage and the time it took for each military branch to then create and staff a TLPO, *see supra* Background, Part B. Now, "[e]ntities that seek to license DOD Trademarks must apply and negotiate for licenses from each of the offices for the respective service branches." Compl. ¶ 61.

1. <u>SOS's Negotiations and 2012 License with the Army's TLPO.</u>

From 2011 to 2012, SOS negotiated with the Army TLPO over the terms of a license to use Army marks. *Id.* ¶¶ 64-68. For example, in 2011, Jensen emailed SOS saying that, in general, a license would allow SOS to use the Army's logo on dog tags. *Id.* ¶ 66. Those emails did not discuss using the logo alongside a Bible quote. *Id.*; *see also* MTD Ex. 1. In 2012, SOS asked if DOD licensing guidelines precluded Bible verses alongside Army marks, and Jensen said that, if a license is "not approved, it would most likely be due to the biblical scripture." *Id.* ¶ 67; *see also* MTD Ex. 2. Months later, the Army TLPO contracted with SOS, giving it a license to use Army marks alongside general, inspirational messages ("I will be strong and courageous" or "I can do all things") without explicit Biblical citation. *Id.* ¶¶ 68-70; *see also* MTD Ex. 3, Army Licenses.[3] While SOS now claims this burdened its religious exercise, *id.* ¶ 71, it did not challenge the restrictions at that time or when the licenses were reissued in 2015 and 2018. *See* MTD Ex. 3.

Instead, it appears SOS continued selling items with Bible quotes alongside Army marks. This came to Army TLPO's attention when the Military Religious Freedom Foundation (MRFF), an advocacy organization, sent each military licensing office a letter on July 8, 2019, notifying

---

[3] SOS repeatedly references licensing contracts with the Army, Marines, and Air Force, which courts typically consider in ruling on a motion to dismiss where, as here, they are central to a party's claims. *Cf. In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[T]he contracts were referred to in the complaints, and . . . are central to the plaintiffs' claims, [so] we may consider the terms of the contracts in assessing the motions to dismiss.").

them of potential infringement by SOS. *Id.* ¶¶ 99-100. The Army TLPO then sent SOS an email that included public reporting of MRFF's letter, *id.* ¶ 100,[4] and told SOS it was "not authorized to put biblical verses on your Army products" and asked it to remove Bible citations from Army products in accordance with its licensing agreement. *Id.*

In October 2020, the Army TLPO offered to renew SOS's contract. *Id.* ¶ 72. SOS asked to change the contract to allow using Army marks next to seven Bible quotes, offering to include a disclaimer on its packaging and advertising that the Army does not endorse SOS or its licensed products. *Id.* ¶ 73. On March 25, 2021, then-Army TLPO Director, Michael Sullivan, rejected that request, noting "DOD policy prohibits us from licensing marks for any purpose intended to promote religious beliefs (including non-belief)" and citing the DODI. *Id.* ¶ 74; *see also* MTD Ex. 4. SOS's last licensing contract with the Army expired in September 2021. *Id.* ¶ 75.

2.   SOS's Negotiations and 2018 License with the Marine Corps' TLPO.

As for the Marine Corps, according to SOS, USMC Trademark Counsel Philip Greene told SOS in 2011 that it needed to either (1) obtain a license to continue selling products with USMC marks, or (2) make clear that its products were not endorsed "as being licensed by the Marine Corps." *Id.* ¶ 77. SOS tried obtaining a licensing agreement first, but Greene told SOS that the USMC TLPO was uncomfortable licensing religious materials. *Id.* ¶¶ 77-78. So instead of obtaining a license, SOS, from 2011 to 2017, "sold its products without a license and refrained from stating [they] were licensed by the Marine Corps." *Id.* ¶ 79.

In 2017, the Army & Air Force Exchange Service (AAFES), DOD's largest retailer, *see* 10 U.S.C. § 2481, and by then a distributor for SOS products, asked SOS for its USMC license.

---

[4] *See also* Hemant Mehta, *Group Demands U.S. Military Block Christian Jewelry Store From Using Its Logos*, FRIENDLY ATHEIST, (July 8, 2019), https://friendlyatheist.patheos.com/2019/07/08/group-demands-u-s-military-block-christian-jewelry-store-from-using-its-logos/.

*Id.* ¶ 80. SOS believed that it did not need a license if "products did not say they were licensed by the Marine Corps." *Id.* But the Marine Corps made clear to SOS that it needed a licensing contract. Specifically, on May 15, 2017, O'Haver, the Marine Corps TLPO Director, reminded SOS that, "[p]er our 2013 guidance," SOS needed to apply for a license and its USMC products would "need to be stand-alone items, per [the DODI], but you can offer purchasers the ability to customize their purchase or to purchase additional items." *See* Compl. ¶ 81; *see also* MTD Ex. 5, Greene Email & C&D Notice, at 4. SOS alleges that it never received any 2013 guidance about the DODI and that, when it resumed negotiations in 2017 to obtain a license, O'Haver said that SOS could display Marine Corps marks on products that drew inspiration from the Bible but that it needed to keep "chapter and verse reference" out and avoid "controversial passages." *Id.* ¶ 83.

On August 16, 2018, the Marine Corps TLPO contracted with SOS, giving it a license to use USMC marks with the understanding that it could draw "inspirational words" from the Bible without citing "Scripture verses." *Id.* ¶ 84; MTD Ex. 6, USMC 2018 License. SOS alleges that it complied with the request to avoid "controversial" passages, but did not avoid quoting scripture. Compl. ¶ 85. It alleges that its Marine Corps' license did "not contain any restriction" on using "religious passages or symbols." *Id.* ¶ 107. So SOS continued selling items that cited Biblical scripture alongside USMC trademarks. On July 11, 2019, three days after MRFF's letter to the military branches' licensing offices notifying them of that conduct, *see supra* note 4, Greene, USMC's trademark counsel, issued a cease-and-desist notice to SOS, allegedly at O'Haver's request. *Id.* ¶¶ 102-03; *see also* MTD Ex. 5, at 4. The notice detailed USMC's past conversations with SOS, in which it made clear that SOS could not cite Bible verses alongside USMC marks pursuant to DOD policy, and cautioned that a failure to comply would impact whether SOS's license was terminated. *Id.* ¶¶ 104–06. SOS appears to have continued its noncompliance, as

Greene sent an email on December 18, 2019, stating that he was "at a loss as to what you're not understanding" and "[i]n July, [he] went to great lengths to explain to you that we could not tolerate merchandise that had a) Marine Corps trademarks and b) a religious theme." *See id.* ¶ 109; *see also* Ex. 5, at 2. On August 26, 2021, SOS's Marine Corps license expired and was not renewed. *Id.* ¶ 89. In later correspondence, the Marine Corps noted that (1) SOS did not submit a 2020 royalty report as required by its license, and (2) the license cost the Marines more than it generated in revenue. *Id.* ¶¶ 86-88. SOS alleges that it did submit its royalty reports, and that its revenues were low because the Marine Corps limited the products it could sell. *Id.*

       3.   <u>The Navy's TLPO Denies SOS a Contract to use Navy Trademarks.</u>

In 2019, SOS applied for a license from the Navy TLPO, which allegedly was not issued "due to the fact that their products display Scriptural verses." *Id.* ¶ 90. In that process, Santiago allegedly told SOS "DoD policy prohibit[s] the use of Bible verses on products displaying" Navy marks and the Navy "would approve a license" similar to that approved by the Army. *Id.* ¶ 91.

       4.   <u>SOS's Negotiations and 2017 License with the Air & Space Forces IPMO.</u>

In 2014, SOS tried negotiating a license to use Air Force trademarks. At the time, the Air Force IPMO denied its request. *Id.* ¶ 93. In 2017, when SOS again applied, the Air Force IPMO reiterated that it was "still unable to license faith based products" pursuant to the DODI. *Id.* ¶ 96. But in October 2017, the Air Force entered into a licensing contract with SOS, which allegedly did not expressly limit SOS's "ability to include Bible verses on licensed items." *Id.* ¶¶ 94-95; *see also* MTD Ex. 7 USAF 2017 License. As with the Marines, SOS appears to have interpreted the absence of such terms to implicitly allow it to continue selling products with Bible verses alongside Air Force trademarks. As a result, on July 9, 2019, one day after MRFF's letter, Rowden asked SOS to review its Air Force merchandise to "verify" that it was "using

inspiration[al] quotes instead of quoted scripture," and on July 25, 2019, she reiterated this message. *Id.* ¶ 112-13; *see also* MTD Ex. 8, Rowden Emails. SOS's Air Force license was set to expire on September 30, 2020, but it does not allege if it expired or was extended. Compl. ¶ 98.

### D.    SOS's Claims

SOS brings nine claims. It appears, however, that only SOS's RFRA claim (Count VII), is brought against the individual Defendants. *See* Compl. ¶ 170 (seeking "damages under RFRA"). None of the other claims could support damages against the individual Defendants; the remaining claims seek declaratory or injunctive relief, which is available only from the agency and official-capacity defendants here. For example, Counts I, II, and IV, alleging various First Amendment violations, seek a declaration that DODI 5535.12 be held unconstitutional. *See id.*, Prayer for Relief, at 51, ¶¶ a–c. Those counts neither seek damages nor invoke *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and are thus not properly pled as individual-capacity claims. *See, e.g.*, *Berk v. Wiggins*, No. 18-cv-2301, 2020 WL 6528937, at *3 (N.D. Tex. Oct. 6, 2020) (holding that "non-monetary relief" against federal officers "is unavailable" for constitutional torts because "relief under *Bivens* does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action" (quoting *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016)).[5] Counts VIII and IX are also not against the individual Defendants because the Administrative Procedure Act "does not provide for individual-capacity claims or money damages." *Triplett v. Fed. Bureau of Prisons*, No. 08-cv-1252, 2008 WL 4378430, at *4 (N.D. Tex. Sept. 25, 2008). And Counts III, V, and VI, which seek a declaratory judgment of non-infringement as to DOD marks, are

---

[5] Regardless, any *Bivens* claims would be barred by *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (making "clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity" (quoting *Iqbal*, 556 U.S. at 675)). To the extent SOS contends that it is bringing *Bivens* claims based on its alleged constitutional violations, the individual Defendants reserve the right to move to dismiss such claims.

inapplicable to the individual Defendants, who do not own any DOD trademarks. *See Brooklyn Bottling of Milton, New York, Inc. v. Ecuabeverage Corp.*, No. 07-cv-8483, 2008 WL 577288, at *1 (S.D.N.Y. Mar. 3, 2008) ("Only the owner of the trademark is granted standing to assert a claim of trademark infringement.").

## STATEMENT OF ISSUES

(1) Are damages from DOD employees "appropriate relief" under RFRA when SOS chiefly complains of an ongoing policy for which it can obtain injunctive relief? Answer: NO.

(2) Do the individual Defendants enjoy qualified immunity when they did not personally participate in any RFRA violation because, in enforcing a policy that prohibits DOD trademarks from being used to promote religious beliefs (or non-belief), they did not bar a licensee from selling items with Bible quotes, just those with quotes alongside DOD marks? Answer: YES.

(3) Are the individual Defendants entitled to qualified immunity where SOS cannot show that they violated any clearly established law under RFRA? Answer: YES.

(4) Does the court lack personal jurisdiction over Jensen, O'Haver, and Santiago, who work in Virginia and never directed any activities at the State of Texas? Answer: YES.

## ARGUMENT

RFRA "prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means." *Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020). It allows "[a] person whose religious exercise has been burdened" to assert a claim "and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). It does not permit recovery of damages from the United States; every Court of Appeals to have addressed that issue has held § 2000bb-1(c) does not waive sovereign immunity. *See Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Oklevueha Native Am. Church of*

11

*Haw., Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006). Courts in this circuit follow these holdings. *See Tinsley v. Pittari*, 952 F. Supp. 384, 389 (N.D. Tex. 1996) ("'[A]ppropriate relief' is not the kind of unambiguous waiver necessary to subject the United States to liability for damages."); *accord Bloch v. Thompson*, No. 03-cv-1352, 2007 WL 60930, at *5 (E.D. Tex. Jan. 5, 2007).

RFRA does, however, define "government" to include an "official (or other person acting under color of law) of the United States," *id.* § 20000bb-2(1), and in 2020, the Supreme Court held that this includes federal officials sued in their individual capacities, *Tanvir*, 141 S. Ct. at 490–91. But the Court made clear that RFRA only permits recovery of damages from individual federal officials, "*when appropriate*." *Id.* at 493 (emphasis added). The Court also recognized that the defense of qualified immunity applies to damages actions against individual employees under RFRA. *See id.* at 492 n.* (noting the parties' agreement "that government officials are entitled to assert . . . qualified immunity").

I.   **DAMAGES FROM THE PERSONAL ASSETS OF TRADEMARK LICENSING EMPLOYEES ARE NOT "APPROPRIATE RELIEF" UNDER RFRA.**

The Court in *Tanvir* recognized that damages from individual federal employees are not "appropriate" in *every* case. *See Tanvir*, 141 S. Ct. at 491. Instead, "what relief is 'appropriate' is inherently context dependent." *Id.* (quoting *Sossamon v. Texas*, 563 U.S. 277, 286 (2011)). The question is whether damages are "[s]pecially fitted or suitable, proper" in the context of a particular claim. *Tanvir*, 141 S. Ct. at 491.

In *Tanvir*, Muslim individuals sued FBI agents in their individual and official capacities alleging that they were placed on a no-fly list in retaliation for refusing to be informants against their religious communities. *Id.* at 489. The plaintiffs were taken off the list a year after suit, so their official-capacity claims for injunctive relief were moot. *Id.* But the Court found the only

12

"effective relief" for respondents' "wasted plane tickets" was damages, which may be "the *only* form of relief that can remedy some RFRA violations." *Id.* at 492 (citing cases concerning the destruction of religious property or the performance of autopsies that violate religious beliefs). The Court interpreted RFRA *only* to not "prevent[] courts from awarding such relief." *Id.*

Here, damages are inappropriate because SOS (1) challenges ongoing DOD policy for which it can obtain injunctive relief; (2) is improperly trying to hold individuals financially liable not for their own discretionary acts, but for a policy adopted by their employer (*i.e.*, a policy restricting use of government-owned trademarks to promote ideological speech); and (3) seeks damages when it is doubtful Congress would think it "appropriate."

A.  **Damages are Not an Appropriate Remedy for a RFRA Claim Premised on a Challenge to DOD Trademark Licensing Policy.**

The Supreme Court has "never considered" individual-capacity suits for damages against federal officers "a proper vehicle for altering an entity's policy." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). Such suits are "concerned solely with deterring the unconstitutional acts of individual officers," and are not meant to "deter[] . . . the conduct of a policymaking entity" when "agency policy" causes a "constitutional deprivation." *Id.* at 71. Their singular purpose "is to deter *the officer*." *FDIC v. Meyer*, 510 U.S. 471, 485 (1994). Thus, where a suit "call[s] into question the formulation and implementation of a general policy," individual-capacity damages suits are typically inappropriate. *Abbasi*, 137 S. Ct. at 1860. Instead, a suit for injunctive relief has "long been recognized as the *proper* means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74 (emphasis added).

Here, SOS chiefly complains of an ongoing DOD policy that allegedly caused military licensing offices not to enter into licensing contracts with it. Eight of its nine claims seek relief from that ongoing policy from the official-capacity defendants. *See* Compl. Prayer for Relief, at

13

51, ¶¶ a–g. The individual Defendants neither own DOD marks nor are parties to the licensing contracts. Even according to SOS, they are mere messengers of DOD policy. Yet, SOS seeks to hold them personally and financially liable for simply enforcing a policy set by their employer. To the extent that policy is at all legally suspect (it is not), prospective injunctive and declaratory relief is the *only* "appropriate relief" here. SOS is simply not in the position of the plaintiffs in *Tanvir*, whose injunctive relief claims were moot and for whom damages was the only effective relief for their "wasted plane tickets." 141 S. Ct. at 492.

**B.     It is Not "Appropriate" to Hold Individual Trademark Officials Financially Liable for their Employer's Policy and Actions.**

It is rudimentary in individual-capacity suits that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (noting neither *respondeat superior* nor vicarious liability are applicable in civil rights suits against individuals); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (noting a plaintiff "must allege specific conduct giving rise to" constitutional violation by an individual-capacity defendant). This principle applies equally to federal statutory civil rights claims, *see Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), and is a key defect in SOS's individual-capacity RFRA claims. SOS is attempting to hold the individual Defendants personally liable not for their own discretionary acts and choices, but for their participation in implementing a policy adopted by their employers. That is simply not an appropriate basis for an individual-capacity damages award under RFRA.

Notably absent from SOS's complaint are any allegations that the individual Defendants were involved in formulating the policy of which it complains—or, for that matter, that any of those Defendants were responsible for their employer's decisions not to enter into (or renew) a licensing contract with SOS. The only acts that SOS attributes to Jensen at all are in 2011 or

2012. Compl. ¶¶ 64-66.[6] Its other allegations refer to collective decisions by "Army TLPO and Jensen," *id.* ¶¶ 179, 197, 213, which is improper pleading, *see A.M. v. Holmes*, 830 F.3d 1123, 1163 (10th Cir. 2016) ("[P]laintiff 'must do more than show that their rights were violated or that defendants, as a collective and undifferentiated whole, were responsible[.]'"). In fact, as SOS alleges, it was then-Army TLPO Director Michael Sullivan, not Jensen, who in 2021 rejected its proposal and cited DOD policy. *See* Compl. ¶ 74. The complaint on its face therefore supplies no basis for personal liability against Jensen.

As for the other individual Defendants, nothing in the complaint alleges that they were responsible for the policy to which SOS objects. SOS alleges that Rowden emailed it in 2017 and 2019 to inform it of the DODI and asked it to avoid quoting scripture on Air Force merchandise. *Id.* ¶¶ 96, 112–113. Otherwise, SOS again improperly refers collectively to decisions by "Air Force TMLO and Rowden." *Id.* ¶¶ 182, 200, 216. Likewise, SOS alleges only that Santiago spoke with it in 2019 to say its application was received but that "DoD policy prohibited the use of Bible verses on products displaying" Navy trademarks. *Id.* ¶¶ 18, 91. And according to the complaint, O'Haver merely explained to SOS the "new" DOD policy in 2013, and then again in 2017 and 2018, for the Marine Corps' TLPO. *Id.* ¶¶ 81–84.

SOS does not allege that any of the individual Defendants denied it a license or issued the DODI; it alleges that the "Army," "USMC Trademark Office," and "Navy" did not enter (or re-enter) into licensing contracts with it, and the "Air Force's" restrictions substantially burdened its religious exercise. Compl. ¶¶ 76, 89, 92, 97. Plainly, it is not "appropriate" under RFRA for the individual Defendants to be liable in damages not for their own conduct (i.e., telling SOS of

---

[6] To the extent SOS's claim arises from allegations like this, which occurred more than four years before suit, its claim is barred by RFRA's four-year statute of limitations, *see* 28 U.S.C. § 1658; *see also Garraway v. Lappin*, No. 10-cv-1697, 2012 WL 959422, at *3 (M.D. Pa. Mar. 21, 2012).

DOD policy), but for acts by their employer (i.e., issuing a policy or refusing to enter into licensing contracts).

Reinforcing the inappropriateness of damages against the individual Defendants here is that RFRA does not waive their employer's (i.e., the government's) sovereign immunity for damages claims. And the Supreme Court has long held that "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). SOS cannot "end run" this principle by suing individual officers. *Henley v. Simpson*, 527 F. App'x 303, 307 (5th Cir. 2013).

In *Henley*, former highway-patrol K-9 officers sued state officials under the Fair Labor Standards Act (FLSA) and 42 U.S.C. § 1983 to recover overtime wages incurred from a state policy that required them to train and care for their canines while off-duty. 527 F. App'x at 303-04. The FLSA was the exclusive remedy for their claims, and the court assumed it allowed for individual-capacity damages suits. *Id.* at 306. But because plaintiffs asserted that state officials acted pursuant to an unconstitutional policy, a money judgement would only "'compel the [State]' to revise" its policy. *Id.* at 307 (quoting *Pennhurst*, 465 U.S. at 101 n.11). Moreover, the court stressed that the defendants there had "neither signed nor promulgated the challenged State compensation policy," and that they were being sued merely for implementing a policy adopted by the State. *Id.* Under those circumstances, the Fifth Circuit concluded that the State, not the individual defendants, was the "real party in interest," *id.*, and dismissed the monetary claims against the individuals, noting that while sovereign immunity generally does not bar claims against them, an "application of that rule without context could elevate 'empty formalism' over

16

the principles undergirding sovereign immunity." *Id.* at 308 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)); *see also Luder v. Endicott*, 253 F.3d 1020, 1024 (7th Cir. 2001) (holding same in FLSA suit against individuals).

Here, as in *Henley*, sovereign immunity bars SOS from obtaining damages from the government, and SOS seeks to "end-run" that by suing employees who had no other choice than to act in accordance with DOD policy. *See Parker v. Prairie View A & M Univ.*, 145 F. Supp. 3d 702, 705-07 (S.D. Tex. 2015) (noting *Henley* applies where employees are accused of simply "implementing [government] policy," not where "rogue" officials are accused of "*violating* [a] policy"). It is not "appropriate" relief to require the individual Defendants here to pay damages for a policy adopted by their employer that they did not formulate.

### C.   Congress would Doubt that Damages are "Appropriate" Against Individual Military Trademark Licensing Officials.

"Appropriate relief," as used in a statute, is imbued with "relativity" but "consist[s] *only* of such relief that, in the overall statutory scheme of the Act, is consistent with congressional intent as expressed in the legislative history and furthers the objectives of the legislation." *Ruth Anne M. v. Alvin Indep. Sch. Dist.*, 532 F. Supp. 460, 468 (S.D. Tex. 1982) (emphasis added).

Here, Congress said nothing of damages in RFRA, leaving courts to evaluate when that relief may be "appropriate." RFRA's legislative history is also silent on when, or in what cases, Congress might think damages "appropriate." But Congress' actions in other pertinent areas give strong reasons to doubt that it would think damages from DOD officials are appropriate in the context presented by this case. Congress was active in trademark law before RFRA and knew in the Lanham Act how to hold liable for infringement "any person," including "persons acting for the United States." 15 U.S.C. § 1114. Even then, it generally did not allow mark owners "to recover profits or damages." *Id.* After RFRA, Congress authorized the creation of trademark

17

licensing programs by the military branches. *See* 10 U.S.C. § 2260. Yet nowhere in these laws, or RFRA, did Congress show an intent to have the employees who administer DOD's TLPOs be financially liable. It is thus doubtful Congress would think damages "appropriate" in a case like this. And the court should refrain from interpreting RFRA that way under such circumstances. *Cf. Abbasi*, 137 S. Ct. at 1858 ("[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy . . . .").

## II.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

In any event, the individual Defendants are nevertheless entitled to qualified immunity. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defense is "ample," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and gives officials "breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011). It must be resolved "at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 228 (1991), and shields "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley*, 475 U.S. at 341). It is regularly available as a defense to federal statutory claims. *See Harlow*, 457 U.S. at 818; *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 682 (S.D. Tex. 2013) (citing Fifth Circuit cases holding qualified immunity applies in "suits brought to remedy violations of an individual's statutory rights," including the Rehabilitation Act and Food Stamps Act).

18

The defense of qualified immunity applies to RFRA claims. *See Tanvir*, 141 S. Ct. at 486 n.*; *see also Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 813 (10th Cir. 2022); *Fazaga v. FBI*, 965 F.3d 1015, 1060–61 (9th Cir. 2020); *Walden v. CDC*, 669 F.3d 1277, 1291 (11th Cir. 2012). While the Fifth Circuit has not yet squarely addressed the issue, courts in this circuit have recognized that it applies to individual-capacity RFRA claims. *See Biron v. Fed. Med. Ctr.*, No. 19-cv-322, 2019 WL 3304885, at *4 (N.D. Tex. July 23, 2019), *on appeal*, No. 19-10862 (5th Cir.); *Tinsley*, 952 F. Supp. at 391. Qualified immunity shields government officials "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also Cope v. Cogdill* 3 F.4th 198, 204 (5th Cir. 2021) ("Courts retain flexibility as to which step of the two-step process they consider first."). Here, the individual Defendants enjoy qualified immunity because (1) SOS has not alleged that they personally participated in any action that would violate RFRA, and (2) it cannot show any such violation was clearly established.

## A.   The Individual Defendants Did Not Personally Participate in Violating RFRA.

Under RFRA, the government "shall not substantially burden a person's exercise of religion" unless "it demonstrates that application of the burden. . . is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1(a)–(b). RFRA applies to "all Federal law, and the implementation of that law," *id.* § 2000bb-3(a), and uses the same standards as the Religious Land Use and Institutionalized Persons Act (RLUIPA), *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695 (2014) (citing 42 U.S.C. §§ 2000cc to 2000cc-5).

Here, for starters, SOS does not sufficiently allege the individual Defendants personally participated in conduct that could have violated RFRA. As discussed *supra* Part I.B, SOS at most

alleges these Defendants informed it of DOD policy at various times between 2013 and 2021. It does not allege that they promulgated that policy or decided not enter a licensing contract with it. Such allegations are insufficient to establish a RFRA violation by the individual Defendants. *See Iqbal*, 556 U.S. at 676; *accord Thompson*, 709 F.2d at 382 ("Personal involvement is an essential element of a civil rights cause of action."); *Vetcher v. ICE*, No. 16-cv-0164, 2018 WL 11174809, at *6 (N.D. Tex. Nov. 29, 2018) ("Without personal involvement or participation in an alleged constitutional violation, the individual should be dismissed as a defendant."); *Davis v. Fed. Bureau of Prisons*, No. 15-cv-0884, 2017 WL 11504857, at *8 (D. Colo. Apr. 7, 2017) ("Plaintiff has not adequately asserted how each named defendant was personally involved and responsible for [violating RFRA]."), *aff'd*, 798 F. App'x 274 (10th Cir. 2020).

But even if SOS had alleged that the individual Defendants were somehow responsible for their offices' respective choices not to enter licensing contracts entitling SOS to use DOD trademarks, the individual Defendants would still be entitled to qualified immunity because no violation of RFRA was clearly established under these circumstances. SOS cannot point to any clear law establishing that the acts of which it complains posed a "substantial burden" on the "exercise" of its religious beliefs. On this point, it is unclear what religious belief SOS itself is exercising. For example, SOS itself alleges that its "use of military-related words and insignia is *artistically relevant* to the purpose of its dog tags, namely, to identify the individuals wearing them and convey their  support of the military or patriotism, while also connecting them with and *expressing their* [*i.e., its customers'*] religion." Compl. ¶ 54 (emphasis added). Simply put, SOS does not allege that using DOD marks carries any religious significance, nor does it explain how such use is integral to its religious exercise or beliefs. SOS's specific "religious exercise" is not burdened here.

Nor did the individual Defendants' conduct *substantially* burden any exercise of religion by SOS. "[I]t falls to the plaintiff to demonstrate that the government practice complained of imposes a 'substantial burden' on his religious exercise." *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004). Under Fifth Circuit precedent,

> a government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. . . . [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.

*Id.* at 570. This test "requires a case-by-case, fact-specific inquiry." *Id.* at 571.

Here, SOS alleges only that the individual Defendants informed it of the DODI and does not claim *that conduct* "substantially burdened" its religious exercise. SOS does not allege that the individual Defendants denied it a licensing contract; it attributes those acts to their agencies. Compl. ¶¶ 76, 89, 92, 97. But even if the individual Defendants participated in those decisions, any burden imposed was financial and impacted only SOS's commercial behavior in that it was not allowed to sell products with DOD marks. It did not burden "religious behavior." *Adkins*, 393 F.3d at 570. Nor was SOS forced to "significantly modify" or violate its religious exercise here, as it remains free to sell products with Bible quotes to customers, just not with DOD marks. *Id.* Plus, companies are *not* "generally allowed" to engage in trademark infringement or use DOD marks, which are *not* "generally available." *Id.* at 570 ("[G]overnment action . . . does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed."). In fact, SOS is in no different a position now than if DOD stopped licensing its marks to companies: SOS could sell products with Bible quotes but not

21

lawfully use or infringe on DOD marks. And no case law holds that it is a "substantial burden" on religious exercise when government officials do not enter licensing contracts permitting a company to use government trademarks, a benefit to which others are not generally entitled, simply when that company alleges that "[t]he production of such goods [with Biblical scripture and DOD marks] is" vital to its "foundation and livelihood" as an entity. Compl. ¶ 167. In any event, as argued by the official-capacity defendants, where, as here, government action only limits the way in which an activity is conducted, but does not impair the religious aspect of that activity, there is no "substantial burden" on religious exercise. *See* ECF 21 at 23 (citing cases).

**B.**     **SOS Does Not Allege A Violation Of A Clearly Established Right.**

Even if SOS could establish some RFRA violation here, it certainly could not meet its burden to show that the law was clearly established under the particular circumstances presented by this case. Fundamentally, qualified immunity is about whether *controlling precedent* gave a defendant "fair warning" that his *specific conduct* was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "[O]fficials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages[.]" *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). To "defeat qualified immunity," a plaintiff must meet this "demanding standard" of showing "that the official's conduct was objectively unreasonable in light of a clearly established rule of law." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

 "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Wesby*, 138 S. Ct. at 589 (quoting *al–Kidd*, 563 U.S. at 741). "[A] legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* "The rule must be 'settled law,'" meaning "it is dictated by 'controlling authority' or 'a robust consensus of cases

of persuasive authority.'" *Id.* at 589-90. "It is not enough that the rule is suggested by then-existing precedent." *Id.* at 590. Precedent "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* Courts must not "define clearly established law at a high level of generality," as the "inquiry must be undertaken in light of the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "Generally, to satisfy this standard, the plaintiff must 'identify[] a case in which an officer acting under similar circumstances was held to have violated [the statute], and . . . explain[] why [it] clearly proscribed the conduct of that individual officer.'" *Cope*, 3 F.4th at 205 (citation omitted). This "restrictive analysis" is from "numerous Supreme Court precedents." *Id.* at 204 (citing cases).

Here, even assuming SOS met its burden of alleging the individual Defendants' actions violated RFRA, it cannot show under the specific circumstances of this case that the law "clearly establishe[d] each element" of its RFRA claim. *Bevill v. UAB Walker Coll.*, 62 F. Supp. 2d 1259, 1299 (N.D. Ala. 1999). For one, it cannot point to any case clearly establishing that a company's religious exercise is "substantially burdened" when government officials do not enter licensing contracts to allow companies to use government-owned trademarks alongside religious scripture. In fact, none of the cases cited in SOS's complaint, Compl., nn. 12-35, even touch on a RFRA violation in the context of trademark licensing, and they certainly do not show how "the violative nature of particular conduct" that was allegedly taken by the individual Defendants was "clearly established" to violate RFRA in the context of this case. *See Mullenix*, 577 U.S. at 12.

The closest SOS comes is the wholly distinguishable, non-binding case, *Gerlich v. Leath*, 861 F.3d 697 (8th Cir. 2017), involving a university that made its trademarks available to student groups without reviewing the contents of messages associated with their use, but then denied a pro-marijuana-reform group's use of its marks on shirts promoting illegal drug use pursuant to an

after-the-fact adopted policy. *Id.* at 701-03. In denying qualified immunity to university officials, the Eighth Circuit held that the university created a limited public forum by making its marks widely available to groups if they met certain conditions, and then engaged in unconstitutional viewpoint discrimination under the Free Speech Clause by denying plaintiffs' use of such marks based on their shirts' contents. *Id.* at 705-08. The court also rejected the university's argument that it engaged in government speech in not allowing the group to use its marks. *Id.* at 707-08.

*Gerlich* does not clearly establish the law here. It is not "controlling authority—[much less] a 'robust consensus of persuasive authority'—[defining] the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011). The right in question here is RFRA, yet *Gerlich* involved a wholly different aspect of the First Amendment. Free Speech cases, especially ones involving campus speech, obviously do not clearly establish the law under RFRA. RFRA is concerned solely with whether government conduct substantially burdens religious exercise. *Gerlich*'s facts also significantly differ in other legally important ways, making it far from clearly established law. Critical to each holding in *Gerlich* was that the university "made its trademarks available" to all officially recognized student groups *within* it. 861 F.3d at 705, 707. Here, unlike the student group in *Gerlich*, SOS is not a group within DOD; it is not trying to use military trademarks to facilitate campus speech, but solely for its commercial activities as a business; and it also cannot claim that DOD marks are available for all to use, as licensees must apply and enter into contracts to use DOD marks.

*Gerlich* is not even applicable here. Unlike in *Gerlich*, DOD's control and regulation of the commercial use of its trademarks *is government* speech. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."). As the official-capacity defendants

24

argue, this case has all the hallmarks of government speech. *See* ECF 21 at 15. If that is true, it is
hard to see how a RFRA violation could be clearly established here. *E.g.*, *Turner v. City Council
of City of Fredericksburg, VA*, 534 F.3d 352, 356 (4th Cir. 2008) (holding city policy requiring
nonsectarian legislative prayer did not violate minister's Free Exercise rights when his prayers
were not private but "government speech," as he "was not forced to offer a prayer that violated
his deeply-held religious beliefs" but "given the chance to pray on behalf of the government,"
and was "unwilling to do so" in a way proscribed by the government, "but remains free to pray
on his own behalf, in nongovernmental endeavors, in the manner dictated by his conscience").

Moreover, "government speech must comport with the Establishment Clause," *Pleasant
Grove*, 555 U.S. at 468, which usually "mandates governmental neutrality between religion and
religion, and between religion and nonreligion," *McCreary Cnty. v. ACLU*, 545 U.S. 844, 860
(2005). SOS even claims the DODI violates the Establishment Clause. Compl. ¶¶ 122-26. The
policy it challenges, though, is clearly intended to *ensure* government neutrality (and non-
entanglement) as to religion, as well as to a host of other ideological principles that would-be
licensees might want to promote. SOS cannot point to a case holding that the same government
action simultaneously violates the Establishment Clause *and* RFRA, which grapples separately
with Free Exercise rights. *See, e.g.*, *Newdow v. Bush*, 355 F. Supp. 2d 265, 290 (D.D.C. 2005)
("[Plaintiff] does not cite a single authority that has even indicated that government-sponsored
prayer might not only establish a favored religion (under the Establishment Clause) but also
infringe the free exercise rights of adherents to a disfavored religion (under the Free Exercise
Clause or RFRA). The Court is unaware of any such authority."). Indeed, the Supreme Court has
emphasized "there is a crucial difference between *government* speech endorsing religion, which
the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech

and Free Exercise Clauses protect." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302, 310-13 (2000) (holding that student-initiated and led prayers over PA-system before high school football games were government, not private, speech that violated the Establishment Clause where "school policy explicitly and implicitly encourage[d]" the practice, which took place at a school-sponsored event on school property). Under the circumstances here, it is hard to see how "every reasonable official," *al–Kidd*, 563 U.S. at 741, would know his or her actions violated RFRA when enforcing a policy that is also alleged to have violated the Establishment Clause.

This case thus presents a multitude of issues requiring "recourse to a complicated body of law that seeks . . . to balance a number of competing First Amendment imperatives." *Swanson*, 659 F.3d at 364. Given that controlling case law in no way clearly establishes how the Free Exercise, Speech, and Establishment Clauses apply here, no reasonable trademark licensing official, much less *every* such reasonable official, would have known that they were violating RFRA when enforcing a policy that has never been held unconstitutional under any of those Clauses or RFRA. *See id.* (granting qualified immunity to school principal who spread religious materials at school due to similar overlapping First Amendment issues).

The individual Defendants are entitled to qualified immunity for one final reason. "The *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Id.* "[T]here must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent*, 805 F. 3d at 547. But a reasonable government official could read the DODI as promoting government neutrality or avoiding entanglement with religion by not having the government speak, through the use of its intellectual property and official DOD-owned channels (like AAFES), in ways that "sponsor[]" licensees promoting their belief (or non-belief) in religion. 15 U.S.C. § 1125(a)(1)(A). No reasonable official would have

26

felt free to disregard DOD policy and give SOS what it wanted here. Indeed, in the sentence

preceding the part of the DODI that SOS challenges, the policy references a government ethics

regulation concerning the use of public office for private gain, 5 C.F.R. § 2635.702, in saying

"DOD marks may not be licensed for use in a manner that creates a perception of DOD

endorsement of any non-federal entity or its products." DODI 5535.12(d). The next sentence, the

part of the policy SOS challenges, could well be understood as elaborating on that ethical

prohibition. *See* Exec. Order No. 12731, 55 Fed. Reg. 15159 § 101(n) (Oct. 17, 1990)

("Employees shall endeavor to avoid any actions creating the appearance that they are violating .

. . ethical standards."). And reasonable officials could conclude that if they acted contrary to the

DODI, they would run afoul of their duty to "act impartially and not give preferential treatment

to any private organization." *Id.* § 101(h). The law is not clearly established here.

   To overcome qualified immunity, SOS must "show that the [individual Defendants']

conduct was objectively unreasonable in light of a clearly established rule of law." *Vincent*, 805

F.3d at 547. "Abstract or general statements of legal principle untethered to analogous or near-

analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the

inquiry must focus on whether a right is clearly established as to the specific facts of the case."

*Id.* SOS cannot "point out any case" here involving government licensing of trademarks that

clearly establishes that a policy like the DODI, or more specifically the individual Defendants'

conduct in implementing such a policy, violated RFRA. *See Biron*, 2019 WL 3304885, at *4

(finding the "failure to cite any case where an official acting under similar circumstances was

held to have violated a plaintiff's rights" was "fatal" to a plaintiff's individual-capacity RFRA

claim). And since SOS cannot point to a case with "analogous or near-analogous facts" that

places it "beyond reasonable debate" that enforcement of a policy like this violated RFRA, *Vincent*, 805 F.3d at 547, the individual Defendants are entitled to qualified immunity.

**III.     THE COURT LACKS PERSONAL JURISDICTION OVER JENSEN, O'HAVER, AND SANTIAGO.**

The normal personal jurisdiction rules apply when government officials are sued in their individual-capacities. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014). "Personal jurisdiction exists where the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020) "Texas's long-arm statute is coextensive with the Due Process Clause," so "the two inquiries merge." *Id.* "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). It requires that a defendant "purposefully establish[] minimum contacts within the forum State" *and* that the "assertion of personal jurisdiction . . . comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Minimum contacts can either establish general or specific jurisdiction. *See Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020).

Individuals are subject to general jurisdiction if they are "at home" in a state, usually their "domicile." *Frank*, 947 F.3d at 337. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84. It requires courts to consider whether (1) "the defendant has . . . purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;" (2) "the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts;" and (3) "the exercise of personal jurisdiction is fair and reasonable." *Grewal*, 971 F.3d at 490.

"[M]ere injury to a forum resident is not a sufficient connection to the forum," *Walden*, 571 U.S. at 290, as a defendant's contacts must be "based on his own affiliation with the State" and cannot be "random, fortuitous, or attenuated." *Id.* at 286.

Here, SOS fails to establish personal jurisdiction over Jensen, O'Haver, and Santiago. *See Grewal*, 971 F.3d at 490 (noting "plaintiffs bear the burden of presenting sufficient evidence to support a prima facie case of jurisdiction"). SOS does not allege (nor can it) that these three live in Texas, and thus cannot establish general jurisdiction. Nor can it establish specific jurisdiction over these Defendants. These three Defendants corresponded with SOS from their workplaces in Virginia. Such routine acts for their employers are no different from interactions they have as part of their jobs with many licensees worldwide. This does not subject them to personal jurisdiction. *See Epco Holdings, Inc. v. Enserca, LLC*, No. 10-cv-0726, 2010 WL 2472204, at *3 (S.D. Tex. June 16, 2010) (holding "Bowman did not have a sufficient nexus between his individual capacity, the forum, and this litigation" where he simply "signed invoices and wrote emails related to the transaction between [his employer] and [plaintiff]"); *Satkides v. Cooper*, 742 F. Supp. 382, 387 (W.D. Tex. 1990) ("[I]t would offend traditional notions of fair play and substantial justice to force employees who have occasion to do business by telephone or mail with any number of given States, to require that they defend lawsuits in those States in their individual capacity based on acts performed not for their own benefit, but for . . . their employer."); *Vu v. Meese*, 755 F. Supp. 1375, 1378 (E.D. La. 1991).

And even if some further act were attributed to them, like not entering into a licensing contract with SOS, it still would not subject them to personal jurisdiction because "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311-12 (5th Cir. 2007) ("An exchange of

29

communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."); *see also Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 684 (S.D. Tex. 2014) (same); *Mr Showers, LLC v. Mr. Shower Door, Inc.*, No. 21-cv-00520, 2021 WL 5918921, at *5 (E.D. Tex. Dec. 15, 2021) (holding no personal jurisdiction in a trademark dispute where Connecticut-defendant's communications with Texas-plaintiff included cease-and-desist letter and threatening email). By suing Jensen, O'Haver, and Santiago merely because it "resides in this judicial district," Compl. ¶ 26, SOS subverts clear rules of personal jurisdiction, *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("Jurisdiction must not be based on the fortuity of one party residing in the forum state."). This court must hold that it lacks personal jurisdiction over these Defendants. *See Walden*, 571 U.S. at 285, 290 (noting "plaintiff cannot be the only link between the defendant and the forum," and "mere injury to a forum resident is" insufficient).

## CONCLUSION

For the foregoing reasons, all claims against the individual Defendants must be dismissed.


DATE: May 9, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director,
Civil Division, Torts Branch

ANDREA W. MCCARTHY
Senior Trial Counsel, Torts Branch

/s/ Connor J. Hackert
CONNOR J. HACKERT (PA Bar # 320753)
Trial Attorney, Torts Branch
Civil Division, U.S. Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
Phone: 202-616-4332
Fax: 202-616-4314
Email: Connor.Hackert@usdoj.gov
*Attorneys for the Individual Defendants*

## CERTIFICATE OF SERVICE

I certify that on the date below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing ("NEF") to the email addresses of the counsel of record for all parties.

Date: May 9, 2022

/s/ Connor J. Hackert
CONNOR J. HACKERT
Trial Attorney, Torts Branch
Civil Division, U.S. Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
Phone: 202-616-4332
Fax: 202-616-4314
Email: Connor.Hackert@usdoj.gov
*Attorneys for the Individual Defendants*